# IN THE COURT OF APPEALS OF IOWA

No. 15-1011
Filed September 23, 2015

IN THE INTEREST OF H.H., M.H.,
and G.H.,
    **Minor Children,**

**J.H., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Clayton County, Stephanie Rattenborg, District Associate Judge.

A mother appeals the district court's termination of her parental rights. **AFFIRMED.**

Mary Jane White of Law Office of Mary Jane White, Waukon, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Alan Heavens, County Attorney, and Ry Meyer, Assistant County Attorney, for appellee.

Gregory Schiller of Schiller Law Office, Monona, for father.

Kimberly Lange of Kimberly S. Lange Law Office, Edgewood, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A mother challenges the juvenile court order terminating her parental relationship with three children, who were ages ten, eight, and six at the time of the hearing. She raises a multitude of issues on appeal. Finding no merit in her claims, we affirm.

The mother, Jessica, and her husband, Adam, lived in Clayton County with their three children: H.H., M.H., and G.H. The family came to the attention of the Iowa Department of Human Services (DHS) on September 16, 2012, when Adam shot Jessica in the back of the head with a shotgun. Jessica survived.

The DHS removed the children on September 17, 2012. Jessica was unable to attend the hearing because she remained hospitalized, but she was represented by counsel. The DHS placed the children with paternal cousins. The juvenile court adjudicated H.H., M.H., and G.H. as children in need of assistance (CINA) on November 15, 2012. Over the course of the next two years, the DHS returned the children to Jessica's custody four times—only to remove them each time when Jessica tested positive for drugs or failed to follow through with treatment.

The State filed its petition to terminate parental rights on October 17, 2014. The State amended the petition on November 13, 2014. The juvenile court held an eight-day termination hearing over the course of three months beginning on February 25, 2015. The juvenile court terminated the parental rights of Adam and Jessica on June 1, 2015. Jessica now appeals.[1] She claims

---

[1] Adam does not appeal and is not a party to these proceedings.

the State did not prove the grounds for termination by clear and convincing evidence. She also argues termination is not in the best interest of the children due to their strong bond with her. Jessica also claims she was denied reasonable efforts towards reunification and the juvenile court violated the due process rights of her and the children.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We uphold an order terminating parental rights if the record includes clear and convincing evidence supporting the statutory grounds. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

## I.      Grounds for Termination

Upon review of the 1760 pages of transcript and two boxes of record, we affirm the juvenile court's termination of Jessica's parental rights under Iowa Code section 232.116(1)(f) and (*l*). We address the paragraphs in reverse order.

### A.      Iowa Code section 232.116(1)(*l*)

The juvenile court decided the State proved by clear and convincing evidence that termination was appropriate under paragraph (*l*). That paragraph includes three elements:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to

the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Iowa Code § 232.116(1)(*l*).

Like the juvenile court, we find these elements were satisfied. Jessica does not dispute that the children have been adjudicated CINA.

As for the second element, the evidence established that Jessica has a severe substance-abuse related disorder. Psychologist Seth Brown diagnosed Jessica with stimulant use disorder (severe, amphetamine type substance) under the DSM-5 on November 6, 2013. Jessica also was diagnosed with alcohol use disorder, moderate. Jessica admits using methamphetamine for nineteen years. She also admits she and Adam were both using methamphetamine at the time of the shooting.

We find that as a result of these diagnoses, Jessica presents a danger to herself and the children. Jessica's efforts to deal with her addiction during the CINA proceedings have placed the children on an emotional roller coaster of returns and removals from their mother's care. The DHS approved trial home placements on four separate occasions, but each time the workers again removed them because of Jessica's inability to stay clean or enter treatment.

The first trial home placement began on February 1, 2013, but ended shortly after when Jessica's sweat patch test came back positive for methamphetamine. The children were returned to relative care and Jessica resumed supervised visitation on February 18, 2013.

Jessica continued to make progress, and on May 13, 2013 another trial home placement began. But Jessica tested positive for methamphetamine on

May 30, 2013. Following this positive test Jessica decided to enter residential treatment. A June 13, 2013 modification of the dispositional order allowed the children to be returned to Jessica contingent on her admission and active participation in a residential substance abuse program. She started on June 26, 2013. But Jessica left the program without completing it on July 23, 2013. The children were once again removed from her care and Jessica returned to supervised visitation. The DHS placed the children in relative foster care.

Jessica again made strides toward quelling her addiction and gradually worked toward monitored visits with the goal of unsupervised visits after thirty days, but Jessica tested positive in both September and October of 2013. The State refrained from filing a termination petition as the parties still believed reunification could occur.

Another trial home placement began on April 9, 2014. Because of Jessica's progress, the children were returned to her care under Iowa Code section 232.104(2)(a). Then Jessica again tested positive for methamphetamines on June 17, 2014. The children were removed from their mother's care and placed back into DHS custody. A new child protective assessment was founded for denial of critical care for lack of supervision and using methamphetamine while caring for a child. On September 24, 2014, Jessica was arrested for operating while under the influence of methamphetamine. On November 13, 2014, the children were placed with their current foster family. Jessica has since tested positive for methamphetamines on three occasions.

We recognize general statements about methamphetamine addiction alone are not enough to establish an imminent likelihood of physical harm for a determination of CINA under section 232.2(6)(b). *See In re J.S.*, 846 N.W.2d 36, 43–44 (Iowa 2014) ("The State failed to prove any specific prior incidents of abuse or neglect. Its case was based on the general characteristics of methamphetamine addiction, and for section 232.2(6)(b) purposes, we do not believe that is automatically enough to establish an imminent likelihood of physical harm to the children."). But we are addressing a different statute here. *See* Iowa Code § 232.116(1)(*l*)(2) (requiring proof disorder presents a danger to self or others as evidenced by prior acts). Jessica's prior acts are not just methamphetamine use. During the course of these proceedings, she was arrested for and admitted to operating a vehicle while under the influence of methamphetamine. Following the longest home placement in 2014, a new child protective assessment found she had denied the children critical care and failed to provide proper supervision because she was using methamphetamine. Our courts have recognized the hazards of leaving children in the care of methamphetamine users. *See State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005). The potential for danger is also heightened by Jessica's living situation. She is currently living with a paramour who has a history of drug offenses and was the subject of a search warrant that resulted in the seizure of methamphetamine production equipment from his home.

Finally, the State established that because of Jessica's prognosis the children cannot be returned to her care in a reasonable period of time given their

ages and need for permanency. The children have been removed on and off since 2012, and despite Jessica's attempts at overcoming her addiction, she has been unable to achieve that goal long term. Jessica has continued to seek out therapy[2] but tested positive for methamphetamine as recently as February 18, 2015, one week before the start of the termination hearing. Since the start of the CINA proceedings she has tested positive for drug use eleven times. The children are ten, eight, and six, respectively. They have spent the last three years being shuttled between Jessica and foster care. The children have indicated they just want permanency. Jessica has not shown the ability to quit using methamphetamine during these proceedings; we find the children's need for permanency can only be met through termination of parental rights. *See A.M.*, 843 N.W.2d at 113 (citing *In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and the "need for a permanent home")).

### B. Iowa Code section 232.116(1)(f)

The juvenile court also found termination was appropriate under paragraph (f). That section includes the following elements:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

---

[2] The record indicates Jessica completed inpatient substance abuse therapy in May 2015.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Jessica challenges proof of the third element, alleging even though the children have been removed for at least twelve of the last eighteen months, she has had a trial period of longer than thirty days. Jessica misreads section 232.116(1)(f)(3). *See In re D.M.J.*, 780 N.W.2d 243, 245-46 (Iowa Ct. App. 2010) (analyzing similar structural provision of section 232.116(1)(h)); *In re T.R.*, No. 05-1031, 2005 WL 2086143, at *2 (Iowa Ct. App. Aug. 31, 2005).

The word "or" is disjunctive unless contrary legislative intent is shown. *Kearney v. Ahmann*, 264 N.W.2d 768, 769 (Iowa 1978). Contrary legislative intent is not present here. Because the legislature used a comma in the statute before the word "or," the subsequent language "and any trial period at home has been less than thirty days" applies to and qualifies only the language after the comma, in this instance, "or for the last twelve consecutive months." *State v. Kluesner*, 389 N.W.2d 370, 371–72 (Iowa 1986) (stating the absence of a comma following certain words suggests the remainder of the phrase within which the words appear was intended to modify only those certain words and was not intended to travel further forward in the sentence to modify earlier phrases as well). The children have been removed from Jessica's custody for twelve of the last eighteen months. Jessica does not dispute this fact. The longest trial placement does not apply to the first clause of section (f)(3). Therefore we affirm the mother's termination under subsection (f).

## II. Iowa Code section 232.116(3)

Jessica contends her close relationship with the children weighs against terminating her parental rights. Under section 232.116(3)(c), the court is not obligated to terminate parental rights when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." A finding under subsection three is permissive, not mandatory. *A.M.*, 843 N.W.2d 113. We base our discretion on "the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011).

We agree a strong bond exists between Jessica and the children. Before the termination hearing started, the children reported to their attorney and guardian ad litem (GAL) they wanted to go back to their mother permanently. But in the months following that meeting, the children indicated they just wanted a stable home whether it was with or without Jessica. They also reported it was "ok" that Jessica was unable to attend visitation. In this case of repeatedly dashed hopes of reunification, the children's need for permanency overcomes any detriment to the children from losing the legal connection with their mother. We find insufficient evidence to preclude termination of parental rights under section 232.116(3)(c).

## III. Reasonable Efforts

Jessica alleges DHS did not provide her with reasonable services. Specifically, she argues "[h]earing evidence shows DHS and County Attorney's

active obstruction of [Jessica's] access to reunification services, as motivated by clear and retaliatory animus towards both [Jessica] and [her boyfriend] and compounded by misrepresentations to the CINA Court and the TPR Court on the issue of reasonable efforts." In support of this argument, the mother's attorney offers four bullet points and seven sub-bullet points, several of which are not full sentences. The mother's attorney then cites to her motion to reconsider filed in the juvenile court and her own lengthy trial brief, only a portion of which appears in our appellate record. We find the disjointed arguments offered by the mother's attorney to be unconvincing.

The State has an obligation to provide reasonable services, but the parent must demand different or additional services the parent may require prior to the termination hearing. *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). If a parent does not request additional services at the appropriate time, the argument that DHS did not make reasonable efforts is waived, and the parent may not later challenge it in the termination proceeding. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). "Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient." *Id.* "A parent must inform the juvenile court of such a challenge." *Id.*

The State claims Jessica did not preserve error on this issue because she did not request additional services at the most recent review proceedings.[3] Assuming without deciding these issues are preserved, in our review of the record, we find the State did make reasonable efforts. Jessica did not request

---

[3] The juvenile court orders do not mention any of the problems Jessica now raises.

the additional services she now asks for on appeal. Jessica was granted additional drug testing protocol when requested. She also requested in-patient treatment, which was delayed because of an evaluation, but was eventually provided and she completed. Jessica entered into evidence recordings of several phone conversations with DHS workers about visitation and gas cards. But in the July 2014 modification order, the court stated gas cards would be a continued service.[4] Jessica was provided gas cards when they were available. Visitation was also continued.

Jessica also discusses the drug testing evidence as part of her reasonable efforts argument. Jessica underwent sweat patch testing during these proceedings. She also provided urine samples for testing at her own request. Jessica asserts she was obstructed from obtaining off-protocol drug testing.[5] Throughout the hearing, Jessica raised concerns about the sweat patch testing. She claims DHS was not following the proper protocol in collecting her sample and as a result she was testing positive when she was not using drugs. Given Jessica's concerns, in September 2013 the court ordered additional urine analysis (UA) coupled with sweat patch testing. In November 2013, the court heard testimony regarding Jessica's sweat patch positive test results and why they might be different from UA results. The court continued the increased testing but did not find the positive tests to be invalid. In any event, the controversy she raises concerning drug tests does not overcome Jessica's

---

[4] Jessica also claims she was denied a structured level of inpatient treatment. The record indicates Jessica was offered this service, but did not enter a program.

[5] Off-protocol drug testing is additional monitoring, in this case UA tests, ordered by the court that is not usually required.

problem. Jessica admits to using drugs during the proceedings. She has tested positive from hair stat, sweat patch, and urine analysis. The drug testing provided to Jessica satisfied the reasonable efforts requirement.

## IV. Due Process

Jessica raises several due process arguments. In the same style as her reasonable services arguments, the mother's attorney sets out eight bullet point arguments with thirteen sub-bullet points. Deciphering what we can from this presentation of the claims, we do not find the mother was denied due process.

Jessica challenges the juvenile court's performance. She claims the judge was "multi-tasking on the bench," failed to review judicially-noticed evidence, failed to describe exhibits and audio indices, failed to note Adam's witness and stipulation, and failed to address a pending fee reimbursement. The record does not support these claims of impropriety.

Nothing in the record indicates the court was distracted on the bench. The court issued timely rulings on objections. Nothing indicates the court did not listen to or examine the evidence entered into the record. It is not uncommon for trial courts to have to multi-task, and with statewide electronic filing, courts will continue to do so. The court's opinion was well organized and thoughtful.[6] Nothing in this record or ruling indicates the court failed to give Jessica due process.

Jessica next claims the children were denied due process as the GAL had a conflict of interest in also serving as attorney for the children. The juvenile

---

[6] The court ruled on the Jessica's fee issue in June 2015.

court is not required by statute to appoint a separate attorney and GAL for the children in termination proceedings. The same person may serve in both capacities. Iowa Code § 232.113(2). When the juvenile court is made aware of a potential conflict between the children's best interests, represented by the GAL, and their legal interests, the court may appoint separate counsel for the children to represent their legal interests. *In re G.Y.*, 486 N.W.2d 288, 289 (Iowa 1992); *In re J.P.B.*, 419 N.W.2d 387, 391–92 (Iowa 1988).

We have serious questions as to Jessica's standing to raise the children's due process rights. *See In re J.V.*, 464 N.W.2d 887, 891–92 (Iowa Ct. App. 1990) (raising but not deciding whether the parents had standing to assert the GAL provided ineffective assistance to the children in a parental rights termination case), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). But assuming Jessica does have standing to make such an argument on appeal, we find the GAL did not suffer from a conflict. Our supreme court has recognized there is some conflict between a GAL and that of an attorney in an ordinary lawyer-client relationship. *In re J.P.B.*, 419 N.W.2d at 391–92. The children's best interest, not the children's personal objectives are controlling. *Id.* The court determined the best approach was for the GAL to represent the best interest of the children while making the court aware of the wishes of the children. *Id.* at 392. In this case, the GAL did just that. At the beginning of the hearing the GAL informed the court of the meeting with the children and relayed the children's desire to return to Jessica. Then as their attorney, counsel acted in their best interest during the hearing. At the

conclusion of the hearing, the GAL informed the court of the most recent meeting with the children and their desire just to achieve permanency, with or without Jessica. Counsel also expressed that it was not possible for the children to return to Jessica. We find no conflict between the role of the GAL and the children's attorney.

As for Jessica's remaining claims, we find them to be without merit and warrant no further discussion.

## V.    Conclusion

We affirm the termination of Jessica's parental rights. The children have been removed from her care for twelve of the last eighteen months and cannot be returned home at this time. She also has been diagnosed with a severe alcohol related disorder and her behavior indicates she is a danger to herself or others. While there is a bond between the children and Jessica, we find it is not so strong as to outweigh the need for termination. We find no merit in her claims that she was denied due process or reasonable reunification services.

**AFFIRMED.**