In the Interest of S.O., B.O., E.O. and C.B., Minor Children,

L.O., Mother, Appellant,

State of Iowa and S.O., B.O., E.O. and C.B., Appellees.

No. 91–867.

Supreme Court of Iowa.

April 15, 1992.

Mary M. Schumacher of Roth & Schumacher, Dubuque, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Mary Lynn Neuhaus, Dubuque, guardian ad litem for appellee children.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

The mother appeals from an order of the juvenile court referee terminating her parental rights to her four children. We transferred the case to the court of appeals which reversed the termination order as to the two oldest children. Having granted further review, we now vacate the decision of the court of appeals and affirm the order of the juvenile court.

## I. *Background.*

L.O. (Lorrie) is the mother of B.O. (born 3/8/82), S.O. (born 3/24/83), C.B. (born 7/10/85), and E.O. (born 10/15/89). E.O. (Ed) was the father of B.O., S.O., and E.O.; R.E. (Rocky) was the father of C.B.

The juvenile court adjudicated all four as children in need of assistance (CINA) under Iowa Code section 232.2(6)(b), (c)(2) (1989) in May of 1989. Following a dispositional hearing in September of 1989, the children were placed in the custody of the department of human services (DHS) for foster care placement. Dispositional review hearings were conducted in December 1989, February 1990, July 1990 and January 1991.

In March 1991, a petition for termination of parent-child relationship was filed. Following hearing, the juvenile court entered an order in May terminating the parental rights of Lorrie, Ed and Rocky. Lorrie appealed the termination order. No appeal was taken by Ed or Rocky.

## II. *Scope of Review.*

■ Our review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the juvenile court, who is able to observe the witnesses, but we are not bound by them. *In re J.S.,* 427 N.W.2d 162, 163 (Iowa 1988). In parental termination proceedings, the State must prove the allegations of its petition by clear and convincing evidence. *Id.*

The grounds for termination are specifically enumerated in Iowa Code section 232.-116 (1991). In considering whether to terminate parental rights, we must give primary consideration to the physical, mental, and emotional condition and needs of the child. Iowa Code § 232.116(2).

Lorrie urges in her appeal that the State failed to establish that there was clear and convincing evidence that, at the time of the termination hearing, the children could not be returned to her care and custody. Iowa Code § 232.116(1)(e)(4), (g)(4). She argues there is clear and convincing evidence that termination of her parental rights would be detrimental to the children. Iowa Code § 232.116(3)(c).

## III. *Suitability of Mother as Custodian.*

■ Both the juvenile court and the court of appeals found the State had established, at the termination hearing, that the children could not be returned to the custody of their mother, Lorrie. We agree.

One of the primary reasons for the termination was Lorrie's failure to protect the children from abuse by Ed and members of her own family. The children were first removed from Lorrie's care in April 1989, as a result of physical abuse Ed inflicted on two of the children. Further investigation revealed Ed had also sexually abused the children. The children had also been physically and sexually abused by some members of Lorrie's family.

Ed has a long history of addictions, including paint sniffing and heavy drinking. He has been imprisoned upon a conviction of willful injury (stabbing). He is physically violent to Lorrie and the children and could seriously injure them.

Lorrie secured a divorce from Ed in June 1989. In August 1989, Lorrie and Ed became parents of G.O. Although Lorrie divorced Ed she continued to maintain contact with him. In September 1989, the juvenile court found Lorrie had violated a no-contact order by allowing Ed to be in the home on numerous instances despite his known sexual abuse and substance abuse problems. In 1990, they occasionally resided together. Although Ed was in Lorrie's home in March 1991, Lorrie was not honest about his presence.

In addition to the children, Lorrie was also physically abused by Ed. In spite of this, she has continued a pattern of sporadic cohabitation and visitation with him. To return the children to Lorrie's custody would place them in imminent risk of harm.

Furthermore, the juvenile court found that Lorrie failed to develop adequate parenting and nurturing skills while services were being provided to her. She made little progress in attaining case plan goals. As stated by the juvenile court, "the children cannot be returned to their mother's

care at this time since she is unable to provide them with an environment where they can be protected from future sexual abuse from their father, and she has shown inadequate progress in any improvement toward providing them with appropriate discipline, healthy and safe environment, of displaying appropriate parenting skills."

The State has established by clear and convincing evidence the children cannot be returned to the custody of their mother.

## IV. *Statutory Exceptions.*

By statute, a court need not terminate a parent-child relationship if the court finds there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship. Iowa Code § 232.116(3)(c).

B.O. and S.O. love their mother and a strong bond has developed between them. Both a social worker and a therapist testified as to the bonding and the detrimental effects of severing the relationship. Both of the children originally were placed in a foster home and then were moved to a therapeutic foster home because of behavioral problems. Both children express their desire to rejoin their mother. They look forward to visits with her.

Other witnesses recognized the bond between the two oldest girls and their mother but recommend termination of the parent-child relationship. A family therapist testified the bond had an intensity that is fueled by anger towards their mother. Another social worker, with eight years experience with substance abusers and their children, described the bond between Lorrie and her two oldest daughters as unhealthy. The social worker testified that an abused child may take on a parental protective role with the nonabusing parent.

The juvenile court acknowledged both daughters continue to have a strong bond with their mother and will go through a period of grief in the separation and termination. Because the benefits of termination in protecting the children from further abuse and providing them with a stable environment outweigh the detriment in severing the bond, the court ordered termination of the parent-child relationship.

There is evidence of unhealthy bonding attributable to this dysfunctional family. *See In re D.P.*, 465 N.W.2d 313, 315 (Iowa App.1990) (mother's parental rights terminated although strong bond existed between her and her children—daughter sexually abused but not by mother); *In re K.F.*, 437 N.W.2d 559, 564 (Iowa 1989) (child's bonding with mother a blend of love, fear, caring and confusion).

We do not find clear and convincing evidence that termination will be detrimental to the children due to the closeness of the mother-daughter relationship.

## V. *Adoptability of Children.*

In parental termination proceedings, our primary concern is the best interest of the child. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The court must always carefully consider what might happen if termination is granted or denied. We recognize that termination is an outcome of last resort. *In re S.J.*, 451 N.W.2d 827, 832 (Iowa 1990).

There are no guarantees as to the future; we can only base our judgment upon the evidence presented. Both children have emotional problems and because of their age may be difficult to place for adoption. Expert witnesses were not in agreement as to whether an adoptive home could be found for the children. Although both children have behavior problems, they are not as severe as those in *In re S.J.* Here, an adoption specialist testified the children were adoptable and their special needs would not be a great barrier to finding a suitable placement. As in *In re D.P.*, we do not find the difficulty in finding an adoptive home for children with serious emotional problems to be a sufficient reason for refusal to terminate the parent-child relationship. The children experienced serious emotional problems, obviously arising from the turbulence and violence within the birth family. B.O. and S.O. should have an opportunity for a stable,

nurturing environment, free from the threat of physical and sexual abuse.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.