**IN THE COURT OF APPEALS OF IOWA**

No. 13-1987
Filed March 26, 2014

**IN THE INTEREST OF C.A. and T.A.**
    **Minor Children,**

**C.A., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


    Mother appeals from an order terminating her parental rights.

**AFFIRMED.**


    Nancy A.S. Trotter, Des Moines, for appellant.

    Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, and John Sarcone, County Attorney, and Jennifer G.

Galloway, Assistant County Attorney, for appellee.


    Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Candace appeals an order terminating the parental rights between her and her children, C.A. and T.A. Candace contends the State did not prove grounds for termination by clear and convincing evidence. She also contends that the strong bond between her and her children militates in favor of not terminating her parental rights.

I.

We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480–81. While giving weight to the findings of the juvenile court, our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

II.

Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must

determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.*

## A.

We first address whether the State established grounds for termination. Here, the district court terminated Candace's parental rights pursuant to Iowa Code section 232.116(1)(d) and (f) (2013). "When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm." *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Thus, although Candace challenges both grounds for termination, we address only the ground for termination pursuant to section 232.116(1)(f).

To establish grounds for termination pursuant to paragraph (f), the State must prove by clear and convincing evidence:

(1) The child is four years of age or older;
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96;
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f)(1)-(4). A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992); *In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995). The first three elements are not in dispute. Both children are four years of age or older—C.A. was born in 2000 and T.A. was born in 2001. The children were removed from Candace on December 1, 2011, and were adjudicated in need of assistance on January 9, 2012. The children have been out of Candace's custody for over twelve consecutive months. Candace does dispute, however, whether there is clear and convincing evidence the children cannot be returned to her custody at this time.

This family came to the attention of the Iowa Department of Human Services in November 2011 following a report of alcohol abuse and domestic violence within the household between Candace and her paramour. Following removal of the children, Candace was provided with numerous services to aid in reunification, including substance abuse evaluation and treatment; family safety, risk, and permanency services; and drug screens. While Candace participated in some services, she did not resolve the past harms giving rise to removal or show that she was willing to prevent future harm to her children. Troublingly, Candace completed substance abuse treatment, but she continued to drink afterward concluding that it was not a problem for her. More troubling, Candace minimized or denied both the domestic violence between her and her paramour and the

children's founded reports of physical abuse and thus refused to meaningfully address the issues. Most troubling, Candace continued her relationship with her paramour despite founded reports that the paramour sexually abused C.A. over a period of two years. The sex abuse involved incidents in which the paramour entered C.A.'s bedroom at night and digitally penetrated C.A.'s vagina. C.A. reported that Candace entered the bedroom during one of these incidents and that C.A. told Candace of the abuse. Despite Candace having actual knowledge of her paramour's sexual abuse of C.A., Candace never acted to protect C.A. Indeed, she denied that sex abuse occurred and actively concealed her relationship with her paramour during the time of removal. For example, Candace initially testified that she moved out of the home she shared with her paramour. At a subsequent hearing, she later admitted that she testified untruthfully and that she had, in fact, been residing with her paramour in secret.

There is more than sufficient evidence that the children could not be returned to Candace's custody at the time of the termination hearing as provided in section 232.102. *See In re S.O.*, 483 N.W.2d 602, 604 (Iowa 1992) (upholding termination of mother's parental rights when record demonstrated she was unable to protect child from future sexual abuse by father and was dishonest about his presence in the home); *In re T.J.O.*, 527 N .W.2d 417, 421 (Iowa Ct. App. 1994) ("It is vital in a juvenile matter the parent(s) recognize abuse occurred. The requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs."); *In re L.B., Jr.*, No. 11-0153, 2011 WL 2076403, at *3 (Iowa Ct. App.

May 25, 2011) (affirming termination of parental rights where mother remained with paramour despite founded report of sex abuse because mother was "unable to recognize the serious danger her child is exposed to and is therefore unable to remedy the situation").

B.

Candace contends the juvenile court should not have terminated her parental rights because "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Candace did not prove the statutory exception by clear and convincing evidence. While Candace professes to have a close bond with her children, her conduct does not evidence the same. The children have been removed from her custody for a significant period of time. During this time, Candace had her visitation rights suspended due to her own misconduct. Candace chose to cohabit with her paramour and misrepresented that fact to the Department of Human Services and to the juvenile court. This decision sheds great light on the alleged bond between Candace and her children. Further, the children do not share a bond with Candace. The children did not want to exercise visitation with her. They refer to her as "Candace" and call their foster parents "mom" and "dad." Both children seek the termination of Candace's parental rights so that they can be adopted by their foster family.

Even if Candace had proved a statutory exception, the statutory exceptions set forth in section 232.116(3) are permissive and not mandatory.

That is, it is within the sound discretion of the juvenile court, based upon the unique facts and circumstances of the case and the best interests of the child, to deny termination of the parent's rights even when the parent has proved an exception. *See In re J.V.*, 464 N.W.2d 887, 890 (Iowa Ct. App. 1990). It is clear that the best interests of the children militate in favor of termination of Candace's parental rights. The children are happy and thriving with their foster family and no longer want contact with Candace. It is in the children's best interests to proceed with termination so they can have stability in their lives. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of the children to continue to keep them in temporary foster homes while the natural parents get their lives together.") (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages.") (citation and internal quotation marks omitted); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable.").

### III.

For the foregoing reasons, the order of the juvenile court is affirmed.

**AFFIRMED.**