**IN THE COURT OF APPEALS OF IOWA**

No. 16-1490
Filed November 23, 2016

**IN THE INTEREST OF K.M. and P.B.,**
**Minor Children,**

**T.B., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District

Associate Judge.


        A mother appeals from the juvenile court order adjudicating her two children as

children in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2).

**AFFIRMED.**


        Deborah M. Skelton, Walford, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Cynthia Smith Finley, Cedar Rapids, for minor children.


        Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the juvenile court order adjudicating her two children—K.M., born in 2013, and P.B., born in 2015—as children in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) (2015).[1] The mother contends the State did not prove the grounds for adjudication under section 232.2(6)(c)(2) by clear and convincing evidence. Due to one child being injured during a domestic-abuse incident and the mother's inability to protect the children from future domestic abuse incidents, we affirm the adjudication of both children.

The mother came to the attention of the department of human services (DHS) in August 2015, after P.B.'s father, N.B., assaulted the mother and injured P.B. in the process. The mother was holding P.B. when the father[2] hit the mother and pushed her onto a bed. P.B., who was only a few months old at the time, received a mark on her forehead in the altercation. K.M. was also present during the assault. A confirmed child- abuse assessment was completed naming the father as the person responsible.

DHS completed another child-abuse assessment after a January 2016 incident during which the father hit the mother across the face at a laundromat. P.B. was present during the altercation. The mother called the police. While being arrested, the father resisted and forcefully hit an officer in the face, causing the officer to become unconscious. The resulting child-abuse assessment was founded for denial of critical care, lack of adequate supervision, with the father named as the person responsible.

Voluntary services began in March 2016. The mother participated in Family Safety, Risk, and Permanency (FSRP) and Partners United for Supportive Housing

---

[1] The fathers do not appeal.
[2] We refer to N.B. as "the father" throughout our opinion although we acknowledge N.B. is the biological father of only P.B.

(PUSH) services. Although she was encouraged to do so, the mother did not immediately seek counseling services to address the domestic violence issues. The mother initially stated she did not understand how domestic violence could be child abuse. The mother shared with DHS social workers that her relationship with K.M.'s father had also been violent and she had also witnessed her mother involved in violent relationships when she was a child.

In May 2016, the mother and the father were involved in another violent altercation. During an argument, the father pushed the mother onto the floor and held his hands over her nose and mouth until she could not breathe. The father also received minor scratches to his face and neck in the altercation. The mother was pregnant with the father's child at the time of the incident. Both K.M. and P.B. were present during the assault. The mother notified a DHS social worker of the incident, and the DHS social worker completed a safety check. The DHS social worker reported that K.M. stated he was scared and he saw his mother get hurt. The mother also called the police. Both the mother and the father were arrested for domestic abuse, but the charges against the mother were later dropped. DHS completed another founded child-abuse assessment as a result of the altercation, citing the mother and the father as the persons responsible.

After each of the August 2015, January 2016, and May 2016 domestic-violence incidents, no-contact orders were put into place to protect the mother and the children from the father. Each time, the mother filed requests to cancel the no-contact orders.

The mother began counseling services sometime after the May 2016 incident. Despite the mother's initial steadfast refusal to begin counseling, her counselor testified

at the adjudication hearing that the mother was very engaged in the counseling services. However, also sometime after the May 2016 incident, the mother and the father married. DHS was not aware of the marriage until June 2016, when the children's maternal grandmother reported the marriage due to her concern regarding the mother's continuing relationship with the father.

The CINA petition was filed on May 17, 2016. A combined adjudicatory/dispositional hearing was held July 28, 2016.

At the time of the adjudicatory/dispositional hearing, the father was incarcerated. His attorney opined, twenty-one months "would be the absolute earliest he could realistically expect to be paroled." The mother maintains her relationship with the father; communicates with him regularly; and is seeking to be a placement for another child who is a CINA, born to the father and another woman.

In its adjudicatory and dispositional order, the juvenile court determined:

> It is critical to the safety of her children that [the mother] engages in domestic violence counseling and internalizes how incidents of domestic violence impact her children. [The mother] has a long history of exposure to domestic violence from her own childhood exposure through her mother's poor relationships to her own domestically violent adult relationships with [N.B.] and [K.M.'s father]. The fact that [N.B.] is in jail does not cure the issue. It is concerning that [the mother] . . . had no-contact orders put into place for her protection but very quickly lifted so she could resume a relationship with her attacker. [The mother] does not believe her children are negatively impacted by exposure to domestic violence. She lacks an understanding of the trauma it causes her children to be exposed to violence.

The court also noted a DHS social worker's testimony that she believed without the CINA adjudication and judicial oversight, the mother would not continue participating in voluntary services. The court held the State established by clear and convincing

evidence K.M. and P.B. should be adjudicated as CINA pursuant to section 232.2(6)(c)(2).

Our review of CINA proceedings is de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "Our primary concern is the children's best interests." *Id.*

The mother asserts the juvenile court erred in adjudicating the children as CINA pursuant to section 232.2(6)(c)(2). She argues because the father was incarcerated at the time of the adjudicatory hearing, the State could not present clear and convincing evidence the children were imminently likely to suffer harm. She also argues there was no indication she would not continue participating in voluntary services if the children were not adjudicated CINA.

Section 232.2(6)(c)(2) provides a child in need of assistance is one who "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, . . . to exercise a reasonable degree of care in supervising the child." CINA adjudication determinations must be based upon clear and convincing evidence. Iowa Code § 232.96.

We agree with the juvenile court and find there is clear and convincing evidence establishing grounds for adjudication under section 232.2(6)(c)(2). P.B. was physically injured during the August 2015 domestic-abuse altercation. Although the mother was the victim in all three incidents, she has an obligation to provide reasonable care to her children, including providing for their safety. *See In re S.O.*, 483 N.W.2d 602, 603 (Iowa 1992) (finding "[t]o return the children to [the mother]'s custody would place them in

imminent risk of harm" due to the mother's "continued . . . pattern of sporadic cohabitation and visitation" with her abuser, the father, and her "failure to protect the children from abuse"). The mother knew P.B. was injured in the first reported abuse incident. She was also supervising the children when K.M. was present during two of the documented incidents of domestic violence, and P.B. was present for all three. Further, K.M. expressed understanding of the events he had witnessed stating directly after the May 2016 incident and again at a family team meeting held to discuss the incident that he saw his mother get hurt.

Notwithstanding these facts, the mother has been unable to overcome the cycle of violence and continues to maintain a relationship with the abuser, the father, who is now incarcerated. In fact, she married him. Because she has maintained her relationship with the father and sought cancellation of three no-contact orders in spite of continued abuse in the presence of the children, along with the injury to one child, the mother has failed to exercise a reasonable degree of care in supervising the children. P.B. has suffered harmful effects, and K.M. is imminently likely to suffer harmful effects as a result of the mother's failure to exercise a reasonable degree of care in supervising the children by ensuring they are protected from being injured during domestic altercations. Thus, we find clear and convincing evidence supports ground for adjudication under section 232.2(6)(c)(2).

By all accounts the mother is a good mother to her children. We commend the mother's participation in voluntary services and engagement in domestic-violence counseling. We sympathize with the mother's own history, but she needs to fully understand and overcome the cycle of violence she has experienced. We find little

solace in the father's incarceration because, without fully addressing her issues with perpetrators of domestic violence, the mother lacks the ability to safeguard her children and prevent another abuser from entering her life in the father's absence.

Our fundamental concern is the best interests of the children. We find CINA adjudication is in K.M. and P.B.'s best interests. Adjudication will allow the mother more time to continue counseling and demonstrate she has the knowledge and the ability to provide reasonable care to her children. Adjudication will also allow for continued protective court supervision, ensuring the safety of the children. We therefore affirm the juvenile court's CINA adjudicatory and dispositional order.

**AFFIRMED.**