**IN THE COURT OF APPEALS OF IOWA**

No. 20-0609
Filed July 22, 2020

**IN THE INTEREST OF B.M.,**
**Minor Child,**

**R.M., Father,**
    Appellant,

**K.C., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A child's parents separately appeal the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Chira L. Corwin of Corwin Law Firm, Des Moines, for appellant father.

Agnes G. Warutere of Warutere Law Firm, PLLC, Ankeny, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Brent Pattison (until withdrawal) and Jami J. Hagmeier of Drake Legal Clinic, Des Moines, attorneys and guardians ad litem for minor child.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

A child's parents separately appeal the juvenile court order terminating their parental rights. We find there is clear and convincing evidence in the record to support termination of their parental rights and termination is in the child's best interests. We affirm the decision of the juvenile court.

## I.      Background Facts & Proceedings

R.M., father, and K.C., mother, are the parents of B.M., born in 2019. The parents have a long history of interaction with the Iowa Department of Human Services (DHS). They also have a history of domestic violence and problems with substance abuse, including the excessive use of alcohol.

Their older child, M.M., born in 2015, was removed after an incident of domestic violence in the home.[1] As a result of this incident, the mother received bruising, a bite mark, a swollen lip, and a concussion. The parents' rights to M.M. were terminated in 2017. We affirmed the termination as to the father but reversed the termination as to the mother because she had separated from the father. *In re M.M.*, No. 17-0237, 2017 WL 2461889, at *3 (Iowa Ct. App. June 7, 2017). The mother subsequently reunited with the father and had inconsistent contact with M.M. Her parental rights to M.M. were terminated and the termination was affirmed on appeal. *In re M.M.*, No. 19-0598, 2019 WL 3317403, at *3 (Iowa Ct. App. July 24, 2019).

---

[1] The father pled guilty to a charge of domestic abuse assault.

Two more of the mother's children, A.M., born in 2016, and J.C., born in 2018, were involved in child-in-need-of-assistance (CINA) proceedings.[2] In 2018, A.M. tested positive for methamphetamine. The mother was living with R.M., who was threatening and aggressive to service providers. Again, the mother was inconsistent in her participation in visitation and services. The mother's parental rights were terminated.[3] We affirmed the termination, noting the mother continued to be involved in an intimate relationship with R.M., who posed a safety risk to the mother and children. *In re A.M.*, No. 19-1735, 2020 WL 825975, at *3 (Iowa Ct. App. Feb. 19, 2020). We specifically found:

> The record shows [K.C.] carries on an intimate relationship with her domestic abuser. She minimizes his threats and violence. And she believes he would be a safe caretaker for the children. The juvenile court did not believe [R.M.] made any progress in addressing his controlling and abusive behavior. We agree with the juvenile court's opinion that [R.M.] "continues to pose a safety risk to [K.C.] and any children in her custody." We find it especially important this time to defer to the juvenile court's fact finding. *See M.M.*, 2017 WL 2461889, at *4 (Vogel, J., dissenting) ("This is the credibility assessment that could only be made by the district court judge who presided over this case from its inception and should not be upset by our examination of the cold record."). If a parent "has gained very little insight" over the course of the proceedings about domestic violence and the danger it poses to the family, returning young children to that parent's care goes against their welfare. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).
> On top of the domestic violence danger, the record shows [K.C.] has struggled to maintain stable housing throughout the case. Because she did not have a safe home environment, the DHS could only offer [K.C.] fully supervised visitation. Her lack of adequate housing contributes to our conclusion that the children could not return to [K.C.'s] care at the time of the hearing. *See In re D.M.J.*, 780 N.W.2d 243, 246 (Iowa Ct. App. 2010).

---

[2] Another of the mother's children, S.H., born in 2010, was adjudicated CINA. Those proceedings were closed in May 2018 based on the child's placement with her father, T.H.

[3] The putative fathers of A.M. and J.C. did not appeal the termination of their parental rights.

*Id.*

When B.M. was born, the parents' rights to M.M. had been terminated and A.M. and J.C. were the subject of CINA proceedings. B.M. was removed from the parents' care at birth and placed in foster care. The child was adjudicated CINA under Iowa Code section 232.2(6)(c)(2) and (n) (2019). There was never a trial placement at home.

On July 12, 2019, the State filed a motion to waive reasonable efforts, stating the parents had been receiving services since 2015 to address mental health, substance abuse, and domestic violence, but they continued to have unresolved issues. The juvenile court concluded the State met its burden to show further reasonable efforts at reunification should be waived.

The parents continued to engage in an unhealthy relationship. In October, the mother told a service provider the home was unsafe for a visit that day as she and the father were arguing. Also, the parents were deceptive with service providers about the status of their relationship. At times they stated they were no longer together, although they continued to have contact. The father continued to have anger-management problems. The mother is in a co-dependent relationship with the father. Each parent reported the other parent had been drinking alcohol, which has been problematic for both in the past.[4] In addition, the parents did not have stable housing.

On October 23, 2019, the State filed a petition seeking to terminate the parents' rights. After a hearing, the juvenile court terminated the parents' rights

---

[4] A few months before B.M. was born, the father drank alcohol to the point that he was unresponsive and was hospitalized.

under section 232.116(1)(g) and (h). The court found the parents lacked credibility, noting that although the parents stated they were no longer together, the mother was pregnant with twins and reported R.M. was the father. The court found "both parents are either unable or unwilling to take the necessary steps to provide a safe and stable home for the child free from domestic violence or substance abuse issues and neither additional time nor services would correct the situation." The court determined termination of the parents' rights was in the child's best interests, stating "[t]hese parents had long demonstrated their unwillingness to make meaningful changes to be able to safely parent their children." The court determined none of the exceptions in section 232.116(3) should be applied. The parents each appeal the juvenile court's decision.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III. Sufficiency of the Evidence

The mother and father both claim there is not sufficient evidence in the record to support termination of their parental rights. "When the juvenile court orders termination of parental rights on more than one statutory ground, we need

only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). We will focus on section 232.116(1)(g).

Section 232.116(1)(g) provides for termination of parental rights under the following circumstances:

> The court finds that all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

### A.     Mother

The mother concedes the State adequately proved subsections 232.116(1)(g)(1) and (2), but contends the State did not present clear and convincing evidence to support subsections (3) and (4). She asserts the evidence does not show she was experiencing the problems that led to termination of her parental rights to three of her other children.

We find there is clear and convincing evidence to show the mother lacked the ability or willingness to respond to services. The mother has been receiving services since 2015 but continues to minimize the father's abusive conduct. The parents have a contentious relationship; as recently as October 2019 the mother cancelled a visit, stating it would not be safe for the child because she and the father were arguing. Although the parents were not living together by the time of the termination hearing, the mother testified they talked every day. The parents

continued to have a sexual relationship and the mother was pregnant with twins at the time of the termination hearing. Despite the receipt of the injuries described above, the mother continued to dismiss this incident as "horseplay."

The mother has been unable to process the importance of protecting her child from domestic abuse. The mother testified the father was a safe individual to parent. Her actions and deception throughout the course of the proceedings do not reflect a true appreciation of the danger the father presents to herself or the child, nor do they reflect a genuine commitment to providing a safe home for B.M. *See In re S.O.*, 483 N.W.2d 602, 603 (Iowa 1992) (finding return to mother's care would place children "in imminent risk of harm" due to her "pattern of sporadic cohabitation and visitation" with abusive father and her "failure to protect the children from abuse"); *T.S.*, 868 N.W.2d at 435 (finding statutory grounds for termination satisfied when the mother "had attended domestic violence classes; however, she continued to see her abuser . . . on multiple occasions and in violation of the no-contact order").

We also find there was clear and convincing evidence that an additional period of rehabilitation would not correct the mother's situation. As noted, the mother had been receiving services since 2015 but has not been able to correct the conditions that previously led to the removal of B.M. We agree with the juvenile court's conclusion that it is not likely the mother's situation would be corrected if she were given an additional period of time to work on reunification. We conclude the mother's parental rights were properly terminated under section 232.116(1)(g).

**B.    Father**

The father contests the termination of his parental rights under section 232.116(1)(g).  He does not dispute that there is sufficient evidence to support subsections 232.116(1)(g)(1) and (2), but claims the State did not adequately prove subsections (3) and (4).  He states he began attending therapy to address his problems with anger management.  He points out that he has been able to maintain employment.

On our de novo review of the evidence, we find the father lacks the ability or willingness to respond to services that would correct the situation that led to the removal of the child from his care.  Services have been available to him since 2015 and he continues to struggle with anger-management issues.  The mother had to cancel a scheduled visit, stating it was not safe at that time because the parents were arguing.  He walked out of a joint therapy session with the mother.  He sent aggressive and threatening emails to the DHS social worker.

In addition, there are remaining concerns about substance abuse and mental health.  The father became intoxicated to the point of needing hospitalization just a few months before the child was born.  He also told a provider he used methamphetamine and marijuana within the past year, although later denied making the statement.  He did not complete a substance-abuse evaluation until December 2019.  While that evaluation recommended no services, the report was based only on information provided by the father.  He acknowledged discontinuing mental-health medication without advice from a physician.

The parents were sporadic in attending couple's therapy.  It was reported the mother and father made minimal progress due to lapses in attendance and the

vacillating status of their relationship. The last attended session was in November 2019, when R.M. indicated he thought it better to end his relationship with the mother and work on co-parenting. The therapist declined to address co-parenting issues until the parents further addressed individual issues.

We find there is clear and convincing evidence that an additional period of rehabilitation would not correct the father's situation. The evidence showed the father had not made significant progress since DHS first became involved with the family. It is unlikely the child could be safely returned to the father, even if he was given additional time to work on reunification, given the length of time and the amount of services offered in approximately four and a half years. We conclude the father's parental rights were properly terminated under section 232.116(1)(g).

### IV. Best Interests

The father claims termination of his parental rights is not in the child's best interests. "When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

We find termination of the father's parental rights is in the child's best interests. The father continued to display aggressive and demeaning behavior.

He has unresolved substance-abuse issues. His testimony at the termination hearing is telling. He believes, despite an episode in which he was rendered unconscious by alcohol consumption, that he has no need for treatment. Shortly before the termination hearing, he moved into a new girlfriend's residence. Prior to that move, he was "pretty much living in [his] truck." The juvenile court found, "These parents had long demonstrated their unwillingness to make meaningful changes to be able to safely parent their children." The child needs stability, which the father is not able to provide.

To the extent the mother raises the best interests of the child as an issue, we find termination of her parental rights is also in the child's best interests. She continues to place her relationship with the father over the safety of the child.

B.M. is placed with a family that is willing to adopt. The child is thriving in this placement. While B.M. is not placed with his siblings who were subject to prior termination proceedings, the current placement ensures sibling contact.

We affirm the juvenile court decision terminating the parents' rights.

**AFFIRMED ON BOTH APPEALS.**