780 N.W.2d 243 (2010)
In the Interest of D.M.J., Minor Child,
T.J.O., Mother, Appellant,
M.J., III, Father, Appellant.
No. 09-1746.
Court of Appeals of Iowa.
February 10, 2010.
*244 Joan M. Black, Iowa City, for appellant mother.
Natalie H. Cronk of Law Office of Natalie H. Cronk, Iowa City, for appellant father.
Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Janet M. Lyness, County Attorney, and Emily Voss, Assistant County Attorney, for appellee State.
L. Jay Stein, Iowa City, for minor child.
Considered by VAITHESWARAN, P.J., and POTTERFIELD and MANSFIELD, JJ.
MANSFIELD, J.
Both the father and the mother of D.J. (born September 2008) appeal the termination of their parental rights pursuant to Iowa Code section 232.116(1)(h) (2009). Both parents contend the juvenile court erred in terminating their parental rights because the grounds alleged in the termination petition did not exist at the time of filing, even if they existed at the time of hearing. Each parent also contends termination of parental rights under section 232.116(1)(h) was legally impermissible because a trial home placement in excess of thirty days occurred between March 3 and April 29, 2009. Finally, the mother contends the State failed to prove by clear and convincing that D.J. cannot be returned to her custody and also maintains termination is not in D.J.'s best interests. For the following reasons, we affirm.
D.J. tested positive for cocaine at birth. An attending physician also noticed that the father was intoxicated and that there were arguments between the father and the mother. Nevertheless, the parents were allowed to take him home. However, when the parents failed to bring D.J. to his two-week follow-up appointment, an emergency removal order was sought and obtained.[1] Subsequently, a child in need of assistance (CINA) petition was filed, and on October 22, 2008, all parties stipulated to the granting of the petition. D.J. was placed in foster care with a goal of reunification with his parents. Mental health services, parenting skills training, and substance abuse evaluations and opportunities for treatment, transportation, and visitation were among the services provided. On February 11, 2009, the juvenile court entered an order granting an additional six months to work toward reunification. On March 3, 2009, a trial home placement began.
The trial home placement did not go well. On three occasions when safety checks were performed on the family, it was found that D.J. had been left with unapproved caregivers. Also, episodes of domestic violence occurred, prompting the mother to spend part of the time at a domestic violence shelter. On April 14, an incident took place where both parents in turn tried to take D.J. with them. During the incident, the mother broke a window out of a car, and she was arrested. On April 27, a provider came upon a scene of domestic violence with the mother having just been punched in the lip by the father. This was the last straw and resulted in the termination of the trial home placement as of April 29, 2009, and the resumption of foster care for D.J., with supervised visitation.
On May 15, 2009, a supervised visit had to end early because the mother and the *245 father were getting pretty heated and out of control. In May, the mother also admitted to marijuana use. The mother was incarcerated for most of the month of June. As of the termination hearing in October 2009, she had been incarcerated for fifty-six days out of the last six months, because of theft charges. The mother claimed she had been stealing supplies for D.J. but the items included laundry detergent, bleach, fabric softener, and a body wash for adults.
The father was arrested in May for assaulting the mother. He was incarcerated until late July. The charges were ultimately dismissed. When the father was released, he had one supervised visit with D.J. At that time D.J. did not recognize him, and the father did not appreciate that D.J. needed something to drink. By August 14, the father was rearrested on new charges and back in jail. At the time of the termination hearing, the father was still incarcerated. Testifying by phone at the hearing, the father claimed he had never laid a hand on the mother.
D.J. is developmentally on target and has a bond with his mother. However, at the termination hearing, the mother acknowledged that she had neither housing nor a job. As she put it, "I just need, you know, time, and I know that time is up."
The State filed its petition for termination of parental rights on July 15, 2009, a termination hearing was held on October 20, 2009, and an order terminating parental rights pursuant to section 232.116(1)(h) was entered on November 3, 2009. Both the father and the mother appeal.
We review the termination of parental rights de novo. In re N.V., 744 N.W.2d 634, 636 (Iowa 2008). However, we review issues of statutory interpretation for correction of errors of law. Id.
The parents argue, first, that the statutory grounds for termination must be met at the time the State files its petition for termination of parental rights. When the State moved for termination in this case on July 15, less than six months had elapsed since the February 11 order granting the parents six more months to work toward reunification. However, more than six months had elapsed by the time the juvenile court entered its November 3 termination order.
We find this argument of the parents to be without merit. In the first place, it is not a statutory prerequisite to termination that any period of time granted by an in-court review order have passed. See Iowa Code § 232.116(1)(h) (listing four prerequisites to termination). Here, events took a turn for the worse, and the State responded by moving for termination. That was permissible. In any event, Iowa law does not require all the grounds for termination to exist at the time the petition is filed. In re J.L.H., 326 N.W.2d 284, 286 (Iowa 1982). The law simply requires the court to "find[] that all of the following have occurred" before issuing its termination order. Iowa Code § 232.116(1)(h). The juvenile court properly followed the law on this issue.
The parents next argue that the juvenile court misread Iowa Code section 232.116(1)(h)(3). This provision requires the court to find that the child "has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." The parents maintain that the verbiage "and any trial period at home has been less than thirty days" applies to the clause before the "or," as well as the clause thereafter. This would mean that if the child has been removed from the parents' *246 physical custody for at least six of the last twelve months, the court would still have to find that any trial period at home has been less than thirty days. Because these parents had a trial period at home from March 3 to April 29, they contend their parental rights could not be terminated even though D.J. had been out of their care for more than six of the last twelve months.
We disagree. Given the presence of a comma in the statute before the word "or," we think it is reasonable to conclude that the subsequent language "and any trial period at home has been less than thirty days" applies to and qualifies only the language after the comma. State v. Kluesner, 389 N.W.2d 370, 371-72 (Iowa 1986) (stating the absence of a comma following certain words suggests that the remainder of the phrase within which the words appear was intended to modify only those certain words and was not intended to travel further forward in the sentence to modify earlier phrases as well). Furthermore, the parents' construction of the statute would render part of it superfluous. See Iowa Code § 4.4(2) (disfavoring such constructions). If the parents were right, it would have been far simpler for the legislature to eliminate the alternative after the "or" altogether. Any time the child has been out of the parents' physical custody for the last six months, it follows that he or she will have been out of their physical custody for at least six of the last twelve months, so the second alternative would have been unnecessary.
Lastly, the mother argues that the juvenile court erred in finding that D.J. could not be returned to her care and that termination was in D.J.'s best interests. Our supreme court has recently clarified the analytical framework to determine whether a court should terminate a parent's parental rights under Iowa Code section 232.116. See In re P.L., 778 N.W.2d 33 (Iowa 2010).
[T]he proper analysis under section 232 is first for the court to determine if a ground for termination exists under section 232.116(1). If a ground exists, the court may terminate a parent's parental rights. Iowa Code § 232.116(1). In considering whether to terminate, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Id. § 232.116(2). Any findings in this regard should be contained in the judge's decision. Finally, before terminating a parent's parental rights, the court must consider if any of the exceptions contained in section 232.116(3) allow the court not to terminate. Id. § 232.116(3).
P.L., 778 N.W.2d at 39.
Upon our de novo review of the record, we agree with the juvenile court's finding that the grounds for termination under section 232.116(1)(h) exist. Even the mother conceded in her testimony that she could not take D.J. home at the present time. The mother has neither housing nor employment, and has been in jail on two separate occasions in recent months totaling fifty-six days.
Next, we consider the factors set forth under section 232.116(2). The mother is simply unable to provide D.J. with a safe and nurturing home. Despite being offered services, the mother has continued to use illegal drugs, and continued to engage in criminal activities resulting in her incarceration. In addition, on three occasions, *247 D.J. was left with unapproved caregivers. D.J. is an adoptable child who deserves permanency. D.J. is over a year old and, except for an unsuccessful home placement, has been out of his parents' care essentially since he was born.
Accordingly, we affirm the order terminating the mother and father's parental rights to D.J.
AFFIRMED.
NOTES
[1] Both parents have criminal histories and histories of substance abuse. The mother had two older children, neither of whom was living with her and both of whom had involvement with the Department of Human Services.