**IN THE COURT OF APPEALS OF IOWA**

No. 16-0657
Filed June 15, 2016

**IN THE INTEREST OF L.S.,**
**Minor Child,**

**S.R., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander P.L.C., Mason City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Cynthia Schuknecht of Noah, Smith & Schuknecht, P.L.C., Charles City, for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the order terminating her parental rights.[1] She asserts there is not clear and convincing evidence to support the grounds of termination (Iowa Code section 232.116(1)(g) and (h) (2015)),[2] termination is not in the child's best interests, the department of human services (DHS) has not made reasonable efforts to reunify her and the child, and the close bond between mother and child should preclude termination. We affirm because there is clear and convincing evidence to support the termination, the child needs and deserves permanency, the mother has received more than five years of services and has only recently made improvements in parenting, and the parent-child bond is not sufficient to avoid termination.

---

[1] The child's biological father has not appealed the termination of his parental rights.

[2] The pertinent provisions of section 232.116(1) allow the juvenile court to termination parental rights if:

    (g) The court finds that all of the following have occurred:

        (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

        (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.

        (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

        (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

    (h) The court finds that all of the following have occurred:

        (1) The child is three years of age or younger.

        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

        (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

        (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

**I. Background Facts and Proceedings.**

The mother has been involved with the DHS, first in Alaska and then in Iowa, beginning in 2009. She experiences ongoing substance abuse and mental health problems, which have affected her child-rearing abilities. She has two older children, H.S. and E.H. While involved with DHS in Iowa, L.S. was born in August 2013.

L.S. was adjudicated a child in need of assistance (CINA) on May 15, 2014. The juvenile court noted the mother had a "profound" alcohol addiction but allowed L.S. to stay in her mother's care subject to DHS supervision, reasoning the facts did not justify emergency removal. *See In re L.S.*, Nos. 14-1026, 14-1080, 2014 WL 5252948, at *3 (Iowa Ct. App. Oct. 15, 2014). But the court emphasized it would "certainly consider all placement options thought to be in the best interest of the child" at the time of the dispositional hearing.

On June 12, 2014, in conjunction with a termination hearing concerning her older children, the juvenile court held a dispositional hearing concerning L.S. The court issued an order that same day, in which it continued L.S.'s CINA status and ordered the child removed from the mother's care. The CINA adjudication and disposition were affirmed on appeal from the juvenile court's dispositional order.[3] *Id.* at *4 ("The mother's drinking, especially since the birth of L.S., and her tendency to minimize its negative impact, raise concern about her ability to exercise a reasonable degree of care for L.S. The mother has demonstrated a

---

[3] However, we reversed the order terminating the mother's parental rights as to H.S. and E.H. due to the juvenile court's finding that the mother had a "severe chronic substance abuse problem" rather than the recently amended language of section 232.116(1)(*l*), "a person with a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts." *See L.S.*, 2014 WL 5252948, at *5-7.

cavalier attitude toward selecting care providers and has been unable to recognize alcohol impairment is incompatible with safe parenting.").

The child was returned to the mother's care in November 2014 "based on the circumstances believed to be true that mother was maintaining her sobriety, meeting the expectations of the department and not having contact with B.H.[4] Unfortunately, it would later be found out circumstances were not as had been presented to the [juvenile] court."

On September 3, 2015, the child was again removed from the mother's care due to the mother's unresolved mental health issues, reemergence of substance use, lack of progress in services, multiple violations of a no-contact order between mother and B.H., unresolved anger management and mental health issues of B.H., repeated dishonesty of mother and B.H., lack of appropriate supervision, lack of adequate protective parenting, and lack of appropriate parenting skills.

The mother reported having a new substance abuse evaluation at Prairie Ridge on November 2, 2015, and reported that she had not drank since last year's "pub crawl" on October 31, 2014 (immediately after she "successfully" discharged from Prairie Ridge). However, on November 20, 2015, Prairie Ridge had no record of her being to their agency since October 2014 when she was discharged. Jess Throndson, a substance abuse counselor at Prairie Ridge, reported that the mother's claims to her DHS social worker that she stops in to talk at Prairie Ridge were untrue. The mother did have a new substance abuse

---

[4] B.H. is the father of one of L.S.'s older siblings.

evaluation on December 7, the day before H.S. and E.H.'s second termination hearing was to begin.

The mother scheduled a mental health appointment at WellSource for November 11, 2015, but cancelled it and did not make a future appointment. She had not been there since May 2015. She did attend two individual therapy appointments with Alison Fox (who she saw at WellSource January through May) at the Iowa Specialty Hospital on August 17 and 20. On August 20 the recommendation was for her to participate in weekly individual therapy and parent-child interactive therapy (PCIT) with L.S.

The mother's rights to her two older children were terminated on December 31, 2015. We affirmed the termination of her rights as to those children pursuant to Iowa Code section 232.116(1)(f) (allowing termination where children four years old or older who have been adjudicated CINA, have been out of the parent's custody for at least the last twelve months, and cannot presently be returned to the parent). *In re E.H.*, No. 16-0072, 2016 WL 2744765, at *1-2 (Iowa Ct. App. May 11, 2016).

A review hearing concerning L.S. was held on February 11, 2016, at which point the child had been out of the mother's care for five months. The juvenile court found the child could not be returned to her mother's care because of the mother's unresolved mental health issues, her poor parenting skills, and her failure to cooperate consistently with services. The mother continued to have six hours of supervised visits per week with L.S. (in two- to three-hour blocks).

A petition to terminate the mother's parental rights was filed on February 12, 2016. At the March termination hearing, the mother had yet to make

significant improvements in her mental health, though she had recently begun mental health counseling. Her parenting had improved somewhat. The family safety, risk, and permanency (FSRP) provider, Crystal Kiroff, testified about the mother's progress: "I think it was mostly in this last month like after the termination papers came I noticed that she really put an increase in her efforts to keep [L.S.]"

On April 1, 2016, the juvenile court entered an order terminating the mother's parental rights pursuant to section 232.116(1)(g) and (h). The court also determined DHS had made reasonable efforts at reunification, listing the following:

> In this case the Department has provided FSRP services, behavioral health services, relative, suitable person and family foster care placements, substance abuse evaluations and inpatient and outpatient services, Parent Partner, psychological evaluation, Families Together, psychiatric hospitalization, drug and alcohol testing, individual and family therapy, Family Team Meeting, No Contact Orders, contempt sentences, supervised, semi-supervised overnight and extended visitation, community programming and case management.

The court also determined termination would provide L.S. with the best opportunity for furthering the child's long-term nurturing and growth, as well as the physical, mental, and emotional condition and needs of the child.

Finally, the juvenile court found that the parent-child bond, while acknowledged, did not justify maintaining the mother's parental rights.

The mother appeals.

## II. Scope and Standard of Review.

We review termination decisions de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's findings, particularly

concerning the credibility of witnesses, but are not bound by them.  Iowa R. App.

P. 6.904(3)(g).

**III. Discussion.**

*A. Statutory grounds exist for termination.* We fully agree with the district

court's findings:

> Mother has made improvement from where she started many years ago before [L.S.] was born, and even since [L.S.] was removed last year.  She is employed, sober, not involved with B.H., has reinitiated mental health services, regularly attends visits, loves [L.S.] and wants [L.S.] home.  She has within the last six weeks been able to on occasion impose timeouts and consequences for [L.S.]
>
> Unfortunately, there are a number of areas that remain a barrier for her.  Her past trauma—both as a child and adult—makes it difficult for her to consistently impose discipline.  As a result, [L.S.] is a completely different child in the presence of Mother.  With others [L.S.] is emotionally stable, easily redirected and compliant, which has not been seen for any stretch of time during even a two hour visit with [the] mother.  Even with isolated instances of appropriate disciplining, [L.S.] continues to have lengthy screaming fits during visits.
>
> During the same timeframe when Mother has started to impose discipline in some instances, her lack of appropriate supervision has exposed [L.S.] to cutting, electrocution, poisoning and choking hazards.[5]  It seems that the demands of parenting are too much for Mother, as if when she imposes discipline, she can't also identify and eliminate dangers to her child.  She seems by nature to be a very passive parent, but aside from feeding and trips to the bathroom she seems to use almost exclusively TV and her phone to amuse [L.S.]  She frequently dozes off during visits, and during a rare six-hour visit, slept soundly for over an hour.
>
> Mother testifies that she is trying to be a better parent, and the Court does not doubt that.  It is clear that Mother had no exposure to healthy parenting practices as a child that she can

---

[5] The court referenced recent incidents during visits:

> At a visit on February 18, 2016, [L.S.] managed to get a butcher knife out of a drawer.  Mother did not respond to the situation at all.  Similarly, on March 2, 2016, [L.S.] picked up Mother's nicotine vaporizer.  March 16, 2016, was a particularly troublesome visit, as [L.S.] stuck Mother's keys into an electrical outlet . . . .  Mother did not get up to address these issues (let alone provide enough supervision to prevent them), and didn't even seem to verbally intervene.

draw on, and saddled with her traumatic history, it has been difficult for her to cope with the world in a productive way. Having failed for all this time to address her underlying mental health issues, she has piecemeal worked to resolve her substance abuse addictions and horribly unhealthy relationships with men. Her mental health state remains precarious . . . . For periods of time she can do okay, but devolves quickly. This is a pattern that has been repeated over and over during the past five years and cannot be ignored.

There is no doubt that [L.S.] loves [the] mother and that the feeling is mutual; however, it is not safe for [L.S.] to return to [the] mother's care today or in the foreseeable future. In Ms. Kiroff's words, with consistent effort it isn't "impossible" to think Mother could make sufficient progress in a year, but it certainly is not likely.

. . . .

Mother has been given an inordinate amount of time to remedy her parenting deficiencies. She has had three different DHS case managers and numerous FSRP workers during the five and a half years of services offered Mother in Iowa. Each provider has ultimately come to the same conclusion: she hasn't changed, she isn't going to change and [L.S.] deserves better.

At the time of termination, L.S. was under the age of three, had been adjudicated CINA, and had been out of the mother's care for at least six months, during which there had been no trial home placements.[6] The mother had not sufficiently progressed to provide consistent and safe parenting. There is clear and convincing evidence supporting termination pursuant to section 232.116(1)(h).

---

[6] The mother argues the nine-month trial home placement ending in September 2015 serves to negate the statutory requirement that "[t]he child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." Iowa Code § 232.116(1)(g). She argues the "any" in the phrase "and any trial period at home has been less than thirty days" modifies the entire paragraph. However, the paragraph is in the disjunctive: either (1) the child has been removed from custody for at least six months of the last twelve months *or* (2) for the last six consecutive months—the phrase "and any trial period" modifies only this second alternative. *In re D.M.J.*, 780 N.W.2d 243, 245-46 (Iowa Ct. App. 2010) ("Given the presence of a comma in the statute before the word 'or,' we think it is reasonable to conclude that the subsequent language 'and any trial period at home has been less than thirty days' applies to and qualifies only the language after the comma.").

*B. Termination is in the child's best interests.* Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the child's best interests. Iowa Code § 232.116(2); *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *see also In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). In evaluating this issue, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778.

The trial court found:

> Given that [the mother] cannot take care of herself consistently, she cannot properly care for a child. She has difficulty doing that for a two hour visit. The child has not yet been physically injured during visits, but in the last month alone there have been four significant chances for that to happen that Ms. Kiroff prevented. Mother is unable to meet the child's needs, let alone stay awake for a two hour visit. On a fulltime basis, it would be disastrous to leave her alone with [L.S.].

We acknowledge the mother's recent progress. However, we cannot ignore that the progress comes after several years of services and that her renewed dedication to meet case-plan goals seems to come after the termination petition was filed. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("[C]hanges in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient.").

"Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance

may be indicative of the quality of the future care that parent is capable of providing.'" *A.B.*, 815 N.W.2d at 778 (quoting *C.B.*, 611 N.W.2d at 495). The mother's past performance has not been one of good parenting. Her rights to her two older children were terminated. She is beginning to work on her mental health and appears to be abstaining from alcohol abuse. However, we agree with the juvenile court that her ability to provide adequate parenting is not likely to come soon enough for L.S. Thus, we agree that the child's best opportunity for permanency and safety is with termination of the mother's parental rights.

*C. Reasonable efforts at reunification were made.* The mother challenges the efforts made to reunify her with her child. However, these complaints were not raised until the termination proceeding, which is too late. *See In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) ("Complaints regarding services are properly raised 'at removal, when the case permanency plan is entered, or at later review hearings.' Where a parent 'fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.' Similarly, we will not review a reasonable efforts claim unless it is raised prior to the termination hearing." (citations omitted)).

In this case, DHS has provided numerous services to the mother over a period exceeding the child's lifetime. Reasonable efforts were made toward reunification.

*D. Section 232.116(3)(c) does not preclude termination.* Finally, the mother contends that the mother-child bond should preclude termination. Iowa Code section 232.116(3)(c) does provide a basis for avoiding termination. "A strong bond between parent and child is a special circumstance which militates

against termination when the statutory grounds have been satisfied.  However, this is not an overriding consideration, but merely a factor to consider." *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007).  The juvenile court observed:

> [L.S.] and [the] mother do share an undeniable bond.  [L.S.] clearly likes spending time with [the] mother, but long-term mother does not have the capability to meet the needs she must have met.  It has taken her over two years to successfully implement a time out. [L.S.] is emotionally out of control with [the] mother because there have not been consistent rules and discipline, which is equally important—if not more so—than cuddling together on the couch.

On our de novo review, we agree that the circumstances presented here do not preclude termination.

We affirm the termination of the mother's parental rights to L.S.

**AFFIRMED.**