**IN THE COURT OF APPEALS OF IOWA**

No. 18-2245
Filed April 3, 2019

**IN THE INTEREST OF L.M.,**
**Minor Child,**

**C.M., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Clay County, Charles Borth, Judge.

A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

Michael H. Johnson, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Shawna L. Ditsworth, Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

A father appeals[1] the termination of his parental rights under Iowa Code section 232.116(1)(h) (2018). Finding no reason to disagree with the juvenile court's findings and conclusions, we affirm.

The child, L.M., was born in April 2015 to the never-married father and mother. The child came to the attention of the department of human services (DHS) and was removed from the mother's care in March 2016 due to physical abuse.[2] A child-abuse assessment was founded as to an "unknown perpetrator" because during the six days when the injuries to the child had occurred, the child had been in the care of no less than seven persons. After a safety plan was put in place but was not followed, the child was removed from the father's care on August 5, 2016.[3] That removal was continued following uncontested child-in-need-of-assistance (CINA) adjudication and disposition hearings.

As noted by the social worker involved with the family, concerns relating to the father included instability "in his life," his mental health, employment, and housing, and poor judgment in social relationships. The juvenile court observed the father experienced "general chaos in daily living expectations." The father has been involved with DHS and services with the child since 2016 and continues to display an inability to care for himself or the child on any long-term basis without assistance.

---

[1] The mother did not appeal the termination of her parental rights.
[2] The child, then eleven months old, had a bruise on her cheek along with finger print marks, a scratch under her neck, and a bump on the back of her head with bruising.
[3] The father had left the child with a known methamphetamine user—his biological mother, from whose care he had been removed when a child due to ongoing neglect and abuse.

The juvenile court succinctly summarized its conclusions:

[The child] cannot be returned to [the father] without appreciable risk of adjudicatory harm. [He] has discontinued mental health therapy, after only marginal participation, in part because he does not believe it is beneficial. This is concerning to the court considering [the father]'s history of suicidal ideation and previous homicidal statements regarding a co-worker (he had falsely claimed to have killed a co-worker in a fight). He has discontinued [Parent Child Interaction Therapy (PCIT)] due to alleged conflicts with his employment. [He] has not had a single overnight visit with [the child] since she was removed from his custody on August 5, 2016. This is well over two years ago. The court recognizes that [the father] has made significant improvements in his personal life. He did, however, start at near rock bottom. The court also believes that he could never have made these improvements without the support of Joe and Karen [V[4]] He has had to learn the most basic living skills from them just to take care of himself.

On appeal, the father asserts the State failed to make reasonable efforts to reunify him and the child, the statutory grounds have not been shown, and termination of parental rights is not in the child's best interests. The child's guardian ad litem has joined in the State's brief and recommends affirming the termination of the father's parental rights.

We review termination of parental rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We give weight to the court's findings, especially when considering the credibility of witnesses, but we are not bound by them. *See* Iowa R. App. P. 6.904(3)(g).

We find no merit in the father's claim that DHS did not make reasonable efforts for reunification. In July 2018, the father asked that the court order DHS to

---

[4] Joe and Karen V (the Vs) brought the father back from their church and into their home in 2017 and have been assisting him in learning the most basic of living skills.

provide expanded visitation, including overnight visits. The court found DHS was making reasonable efforts. It also overruled the father's motion

> to the extent it seeks court-ordered overnight visits at this time, but should be granted to the limited extent of encouraging DHS to facilitate visits on the currently alternating Sundays from 9:00am to 5:00 p.m., to the extent possible, and that those visits may occur at the home of [the father], to the extent possible.

After Sunday visitation was expanded to all day, the father had difficulty regularly confirming and attending these visits. When he did attend visits, he often needed prompting to appropriately parent the child. He also discontinued his time with the child in PCIT, did not regularly call the child, and did not take advantage of the visitation already offered.

Under Iowa Code section 232.116(1)(h) a parent's rights may be terminated if the court finds: (1) the child is three years of age or younger; (2) the child has been adjudicated a CINA; (3) the child "has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days"; and (4) "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time." Upon our de novo review, we agree with the juvenile court that the grounds for termination exist here.

At the time of the termination-of-parental-rights hearing, the child was three years old, had been adjudicated a CINA, and had been out of the father's custody for the last six consecutive months with no trial home visits. The father contends the statutory timeframe was not met because the child had been returned to the mother's care from June 16 to December 20, 2017, thus invoking the exception

that "any trial period at home has been less than thirty days." We have already rejected such a reading of the statutory provision. *See In re D.M.J.*, 780 N.W.2d 243, 245–46 (Iowa Ct. App. 2010) ("Given the presence of a comma in the statute before the word 'or,' we think it is reasonable to conclude that the subsequent language 'and any trial period at home has been less than thirty days' applies to and qualifies only the language *after* the comma.").

The father also asserts the child could be returned to his care at present, noting he has the support of the Vs. We acknowledge and commend the father for his progress toward stability in housing and employment. However, we adopt the juvenile court's findings:

> Even with this support, [the father] continues to struggle taking advantage of all of his available contact with [the child], both in person and through telephone visits. He ends visits early when frustrated. If he cannot provide full care for [the child] during a visit, he certainly cannot do so on a full-time basis, [twenty-four] hours a day, [seven] days a week. He has never safely done so. Due to these concerns and his lack of understanding of age-appropriate expectations, his visits have never even progressed to unsupervised. He continues to need prompts for basic parenting activities. The court strongly believes that without the ongoing support of the [Vs], [the father]'s parental rights would have been terminated some time ago. He would be lost without them. Even with their support, he still struggles. The [Vs] should be applauded for their efforts with respect to [the father], and the court hopes they continue to provide that guidance for [his] best interest. Here, however, it is [the child]'s best interests rather than [the father]'s that the court must consider, and the court does not believe [the father] is in a position, at this time, to have [the child] returned to his custody.

Termination of the father's parental rights was proper under Iowa Code section 232.116(1)(h).

We must next consider whether termination is in the child's best interests. *D.W.*, 791 N.W.2d at 706–07 ("If a ground for termination is established, the court

must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights."). In making the best-interests determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also keep in mind that once the statutory time period has passed, we must consider the child's already shortened opportunity to find permanence and stability. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute. Stated otherwise, plans which extend the . . . period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").

The child is thriving in the foster home, which is the same foster home of her first placement following her first removal. The child has lived with this family for twenty-two of the last twenty-eight months and she is integrated into the family. The family is willing to adopt her. This child has waited over two years for a safe, nurturing home. It is in her best interests to terminate the father's rights so the child can find stability and permanency with her identified family. We affirm.

**AFFIRMED.**