**IN THE COURT OF APPEALS OF IOWA**

No. 19-0060
Filed June 5, 2019

**IN THE INTEREST OF T.B. and A.B.,**
**Minor Children,**

**C.B., Father,**
 Appellant,

**V.S., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father and a mother separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant father.

Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.

Kimberly Ayotte of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Tabor, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

A father[1] and a mother separately appeal the termination of their parental rights to two children: A.B., born in August 2010; and T.B., born in January 2015. The parents challenge the findings of the juvenile court that grounds for termination exist, termination is in the children's best interests, and no permissive reason warrants the preservation of parental rights. On our de novo review, we affirm on both appeals.

**I. Background Facts and Proceedings.**

The family came to the attention of the department of human services (DHS) in January 2017, due to the mother's use of methamphetamine in the residence the parents shared with the children. It was alleged the mother was also selling methamphetamine from her home. On February 16, the children were removed due to domestic violence by the father against the mother, which caused a risk of harm to the children. A domestic-abuse protective order was issued prohibiting the father from contacting the mother. On March 23, the children were adjudicated children in need of assistance (CINA).

On April 12, 2017, the father was arrested for violating the protective order and attempted burglary. The father was incarcerated for the next several months and had little contact with the children.

The mother entered a residential treatment facility. She was participating in substance-abuse and mental-health services. In October 2017, the juvenile court ordered the children to be returned to the mother's care, but before the

---

[1] The father is the putative father of T.B. However, his name is not on T.B.'s birth certificate, and paternity is not established.

children were fully reunified, the mother left the treatment facility. She reported she panicked, struggling with feeling the inability to care for her children. The mother admitted relapsing on methamphetamine.

In December 2017, the mother was admitted to a treatment facility but was discharged the next day.

In January 2018, the mother was again admitted to a residential treatment program but was asked to leave for non-compliance after two weeks. The mother has not been consistent with substance-abuse treatment throughout the juvenile proceedings and has failed to take advantage of the services offered.

The father completed anger-management classes while incarcerated and was released from prison on February 21. A permanency-review hearing was held on February 28 but was continued with the anticipation the State would be filing termination-of-parental-rights petitions as to both children. Termination petitions were filed on March 5.

After his release from custody, the father obtained a substance-abuse and mental-health evaluation. He also obtained full-time employment, insurance, and was fixing up a residence. The father was participating with DHS services and was engaged with the children. His visits progressed to overnights.

A status conference hearing was held on April 3, at which the parties agreed to continue the termination-of-parental-rights hearing until April 24.

In an April 4 permanency order, the court noted the "parents are engaged (now, finally) in [substance-abuse] treatment and working to put themselves in a place of well-being and stability they can be minimally adequate. They are not at this time." The court granted the parents an additional six months to reunify

pursuant to Iowa Code section 232.104(2)(b) (2018). The court stated the mother was to stay the course with in-patient treatment and the father was to continue with out-patient treatment. Both parents were to avoid relapse and remain in recovery.

A June 13 case progress report from the family safety, risk, and permanency services (FSRP) provider noted A.B. was diagnosed with attention deficit hyperactivity disorder and oppositional defiance disorder with aggressive behaviors. A.B. and T.B. were both seeing a therapist. The FSRP provider also noted the mother "stopped keeping in contact with FSRP. She missed many visits and it has been said that she possibly has left the state." The father had started overnight visits with the children "but had to stop due to letting [the mother] drive [T.B.] to daycare one morning." The father had resumed visiting the children every night at his mother's house.

A June 26 report to the court by the DHS social worker outlined the five placements the children had been through since February 2017 and indicated the children were currently living with the paternal grandmother, where they had been since April 27, 2018. The children were both seeing therapist Caron Wedeking weekly for oppositional behaviors, and the father was attending weekly family sessions instead of individual therapy. The report noted the mother had not seen the children since May 29, a visit she had cut short; she was not participating in substance-abuse treatment; she had failed to provide drug screens on three occasions; and her whereabouts were unknown. With respect to the father, the report stated:

> [The father is] always willing to provide drug screens and does so immediately upon being asked. [He] continues to meet with his therapist and work on codependency issues and setting healthy

boundaries with [the mother.] [He] contacts this worker frequently and keep[s] this worker informed. He appears to be dedicated to caring for his kids and maintain his sobriety and mental health. He is open to new ideas and is doing better about asking for help.

[The father] is employed but is not able to work full time due to meeting the needs of the children. He is working on getting his driver's license back but has since sold his truck because he stated it was too much of a temptation to drive without a license.

[The father] has struggled with addiction on and off throughout his life. The threat of relapse is a real possibility.

On July 16, 2018, after a permanency review hearing, the court entered an order finding the children had been removed from the parents for about seventeen months, the children remained CINA, and the children could not be returned to the mother safely. The court placed the children in the father's care, who had obtained a three-bedroom trailer he was fixing up and furnishing. Pursuant to DHS recommendations adopted by the juvenile court, the mother was to engage in residential substance-abuse and mental-health treatment and follow all recommendations of providers. The father was to follow through with therapy and medication management for anxiety and depression. Both parents were to provide drug screens.

Approximately five weeks after the children were placed with the father, the father reported he was being evicted because the person from whom he had purchased the trailer was not paying the lot rent. The father and children moved in with the paternal grandmother.

On August 20, DHS filed a motion to modify placement, alleging the father had left the children in the mother's care despite her being authorized for supervised visits only. Additionally, there was an arrest warrant issued for the father for violation of the no-contact order resulting from the mother reporting the

father had physically and sexually assaulted her. The father acknowledged having allowed the mother to supervise the children. He asserted she was living with him at the time. He denied he assaulted her.

On August 23, the court modified the children's placement, finding a return to the mother was contrary to the children's welfare "due to the mother's unaddressed issues with [substance abuse] and [mental health] and the current allegations against the father." The father later relapsed on methamphetamine.

A termination-of-parental-rights petition was filed in September. The children were moved to a new pre-adoptive foster home in September after having spent time in an emergency shelter. Neither parent appeared at the permanency review and termination hearing on October 23, 2018.

An October 10 letter from the children's therapist was entered into evidence. The therapist indicated the children had a September 26 telephone contact with the parents in which each parent was to address: "(1) taking responsibility and apologizing for their actions which led to the children being removed again, . . . (2) assure the kids that the parents are doing well, and (3) give the kids permission to talk to the therapist about the family and parents—i.e. no secrets." It was the therapist's recommendation the children

> at this time . . . be permanently placed and not have to move again. These two children are extremely resilient, but even resiliency has its limits. Whether that be with their biological parents or in an adoptive home, they deserve to have a forever home where they feel they are safe and are consistently cared for by the same nurturing caretaker(s).

Wedeking also noted the father reported joining Narcotics Anonymous.

A DHS October 19 report to the court provided:

> This worker received a call from Youth Law Center Case Worker, Mandy Clauson who reported that she visited the [B.] children on [October 17, 2018]. Mandy reported that the foster mother Julie, informed her that since the children had phone contact with their parents [T.B] has been wetting the bed, and more defiant. This worker contacted Julie and she did report that [T.B] and [A.B] did exhibit defiant behaviors after the phone call. The foster mom also stated that [A.B.] has continued to ask her if she is going home or staying with the family. Julie reports that [A.B] did have a session with her therapist Caron Wedeking, a week after and did seem to be doing better. However, [T.B.] continues to wet himself during the day and at night. Julie reported that he screams and clenches his fists when he does not get his way. These are all behaviors that began after the phone call with his parents. Julie did report as time has passed she is beginning to see [T.B.] settle back in and the behaviors lessen.

The father's attorney submitted a letter from a substance-abuse counselor indicating the father had an evaluation scheduled for September 12, 2018.

On December 26, 2018, the court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(f), (h), and (*l*).[2] The court found termination is in the children's best interests and the bond between parent and child did not preclude termination.

The parents separately appeal.

**II. Scope and Standard of Review.**

We review de novo the termination of parental rights. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016); *see also In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (noting there is clear

---

[2] Paragraph (f) is applicable to termination of parental rights to A.B., (h) is applicable to T.B., and (*l*) is applicable to both children.

and convincing evidence if "there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence" (citation omitted)).

## III. Grounds for Termination Exist.

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. Section 232.116(1)(f) and (h) allow the court to terminate parental rights if a child of a certain age,[3] has been adjudicated CINA, has been out of the parents' custody for the requisite statutory period, and "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." At the time of the termination hearing, the children had been removed from their parents' custody for all but five weeks of a twenty-month period—far longer than the requisite period under either paragraph. We find termination was proper under section 232.116(1)(f) and (h).

***A. Father's Appeal.*** The father disputes the children have been out of his custody for the requisite statutory period and that the children cannot be returned to him at the present time.

*(1) Removal time.* Section 232.116(1)(f) applies to children four years of age or older and sets a time period of removal: "The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days." When a child is three years of age or

---

[3] Paragraph (f) governs a child four years of age or older, and paragraph (h) is for a child three years of age or younger.

younger, the statutory time frame of removal is shorter: "The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." Iowa Code § 232.116(1)(h)(1), (3).

The father maintains the verbiage "*and any trial period at home has been less than thirty days*" applies to the clause before the "or," as well as the clause thereafter. He argues because the children were returned to him for more than thirty days, termination is not proper. This argument has been rejected previously. "Given the presence of a comma in the statute before the word 'or,' we think it is reasonable to conclude that the subsequent language 'and any trial period at home has been less than thirty days' applies to and qualifies only the language *after* the comma." *In re D.M.J.*, 780 N.W.2d 243, 246 (Iowa Ct. App. 2010).

*(2) Children cannot be returned at present.* The father states there is nothing in the record that shows he "did not have ability to care for the children or that he was not engaged in services to be able to be protective of the minor children." However, the record indicates the father had been evicted from his residence and had admitted a drug relapse after the children were removed. In addition, the juvenile court found the mother's allegations of assault by the father credible. Consequently, the same issues present in March 2017 when the juvenile proceedings began—substance abuse and domestic violence—remained concerns in October 2018.

**B. Mother's Appeal.**[4] The mother contends the juvenile court should have granted her a six-month extension to "continue down the corrective path." We emphasize a six-month extension was given in April 2018. Six months later, the mother has barely begun down that corrective road and has failed to achieve sobriety or stability. The statutory time frame—including an extension—has passed and we find no further extension is warranted. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2001) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.").

## IV. Termination is the Children's Best Interest.

Both parents argue termination is not in the children's best interest. We adopt the juvenile court's findings here:

> To delay permanency any longer and prevent the children from having the environment necessary to heal would not be in their best interests. Both children have been through multiple placements. Both children have been exposed to unsafe environments and caretaking by their parents. The brevity of the Summer 2018 return to their father along with the circumstances to which the kids were exposed during that time were harmful, and further time or services do not at all appear capable of making things better for them if they were returned to either parent.
>
> The court is concerned at the strength of the concurrent plan and level of commitment, given that this is not a relative placement and it was new as of approximately three and a half months ago. However, this concern is not strong enough for it to find termination is not in the best interest of the children. The therapist's most recent letter, which is of record in the underlying CINA, emphasizes the need for these children to have permanency and certainty and stability. It needs to be provided now. Every effort to bring peace to these children's lives needs to be made by the child welfare system, the foster parents, and all involved.

---

[4] The State erroneously contends the mother's appeal was dismissed and does not address her claims. When the appellee fails to file a brief, we "handle the matter in a manner most consonant with justice and [our] own convenience." *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976).

**V. No Permissive Reason Warrants Avoiding Termination.**

Both parents also assert the closeness of the parent-child bond should preclude termination. *See* Iowa Code § 232.116(3)(c) (stating a court need not terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The considerations in subsection (3) allowing the court to avoid termination "are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *M.W.*, 876 N.W.2d at 225 (citation omitted).

We agree with the juvenile court that the closeness of the parent-child relationships is not so strong as to prevent termination of parental rights here. We therefore affirm the termination of parental rights.

**AFFIRMED ON BOTH APPEALS.**