**IN THE COURT OF APPEALS OF IOWA**

No. 19-1735
Filed February 19, 2020

**IN THE INTEREST OF A.M. and J.C.,**
**Minor Children,**

**K.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.


A mother appeals the termination of her parental relationship with two children. **AFFIRMED.**


Agnes G. Warutere, Ankeny, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Brent M. Pattison of Drake Legal Clinic, Des Moines, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

This case involves two children under the age of four: A.M. born in September 2016 and J.C. born in June 2018.[1] Their mother, Kathleen, appeals the juvenile court order terminating her parental rights.[2] She contends the State failed to prove the children could not safely return to her care or that she is unable to respond to services. Because we see clear and convincing evidence in the record to support the juvenile court's order, we affirm.[3]

Kathleen's immersion in the child-welfare system dates to a serious domestic abuse assault in 2015. That summer, Kathleen's live-in paramour, Robert, attacked her, causing bruises, a swollen lip, a bite mark, and a concussion. Kathleen's older two children, M.M. and S.H., were at home when Robert perpetrated the domestic violence. Robert pleaded guilty to domestic abuse assault. That violence led to the juvenile court terminating the mother's parental rights to M.M. in the fall of 2016. But our court reversed that termination. *In re M.M.*, No. 17-0237, 2017 WL 2461889, at *3 (Iowa Ct. App. June 7, 2017).[4] We

---

[1] The mother has two older children, S.H. and M.M., and one younger child, B.M., who was born in June 2019. Her legal relationship with those three children is not at issue here.

[2] The order also terminates the parental rights of the children's putative fathers, who do not appeal.

[3] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility claims. *Id.* The State must present clear and convincing evidence to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the proof. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

[4] After our remand, Kathleen could not regain custody of M.M. because the mother (1) did not fully engage in services, (2) was dishonest with the court about her relationships, and (3) could not secure stable housing.

believed: "The mother has obtained insight into issues of domestic violence, including prevention and coping mechanisms." *Id.* We also believed Kathleen's testimony that she moved to Missouri so she could "obtain a fresh start and have a safer environment for herself and her children" away from Robert. *Id.*

Our beliefs were wrong. At the July 2019 termination hearing Kathleen revealed a continued lack of insight into Robert's domestic violence and the threat it posed to A.M. and J.C. When asked to describe the 2015 incident, Kathleen insisted she and Robert were just "joking around" and her bruising and concussion resulted from "playful wrestling." She also testified her move to Missouri was not to get away from Robert, but to have the support of her mother who lived there. A.M. was born in Missouri. Although Kathleen had once reported A.M. expressed fear of other men based on Robert's threatening behaviors, the mother testified at this termination hearing that A.M. was never scared of Robert. The juvenile court found Kathleen's backpedaling to be "simply untrue."

The hearing also included evidence A.M. tested positive for methamphetamine after Kathleen moved back to Iowa in 2018. Kathleen took no responsibility for the child's drug exposure, speculating in her testimony that the babysitters were using methamphetamine. Kathleen also testified to a series of abrupt moves, explaining she often stayed with family members, who sometimes faced eviction themselves. In November 2018, Kathleen lived with Robert in an apartment in Monroe, Iowa, together with A.M. and J.C., who was only a few months old. When a service provider stopped by the apartment to check on the children's welfare, Robert was aggressive and threatening. The juvenile court approved a request from the Iowa Department of Human Services (DHS) to

remove the children from Kathleen's care. After the children's removal, Kathleen was inconsistent with visitation and other services.

The juvenile court found Kathleen subjected the children to "unstable living conditions, unsafe parenting practices, and unsafe persons." The court was concerned that Kathleen had "completely changed her position" on Robert's suitability as a partner and caretaker for the children. The court noted Robert's "argumentative" demeanor on the witness stand, and Kathleen's approving reaction to his "inappropriate answers."

The court granted the State's petition to terminate Kathleen's parental rights under Iowa Code section 232.116(1) (2019), paragraphs (g)[5] and (h)[6].

---

[5] Paragraph (g) allows for termination if
>    The court finds that all of the following have occurred:
>        (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>        (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
>        (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
>        (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.
>    Iowa Code § 232.116(1)(g).

[6] Paragraph (h) allows for termination if:
>    The court finds that all the following have occurred:
>        (1) The child is three years of age or younger.
>        (2) The child has been adjudicated [CINA under] section 232.96.
>        (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

On appeal, Kathleen argues the State did not offer clear and convincing evidence the children could not be returned to her custody at the present time without the danger of further harm. *See* Iowa Code § 232.116(1)(h)(4); *see also A.M.*, 843 N.W.2d at 111 (interpreting statutory language "at the present time" as the time of the termination hearing). She also contends the State failed to show she lacked the ability or willingness to respond to services or that more time for rehabilitation would not correct the situation. *See* Iowa Code § 232.116(1)(g)(3), (4). Kathleen emphasizes she has consistently tested negative for illegal substances, she has been actively working on her co-dependency issues,[7] and no new allegations of domestic violence have emerged since 2015.

When the juvenile court terminates rights on more than one statutory ground, we may affirm the order on any ground supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We find the State proved paragraph (h) by clear and convincing evidence.

The record shows Kathleen carries on an intimate relationship with her domestic abuser. She minimizes his threats and violence. And she believes he would be a safe caretaker for the children. The juvenile court did not believe Robert made any progress in addressing his controlling and abusive behavior. We agree with the juvenile court's opinion that Robert "continues to pose a safety risk

---

> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

[7] The DHS worker testified Kathleen relied on Robert for financial help and having that power over her contributed to their codependent relationship. Her therapist testified Kathleen's goal was to increase her understanding of codependency and opined any codependency "creates dysfunction in a relationship."

to [Kathleen] and any children in her custody." We find it especially important this time to defer to the juvenile court's fact finding. *See M.M.*, 2017 WL 2461889, at *4 (Vogel, J., dissenting) ("This is the credibility assessment that could only be made by the district court judge who presided over this case from its inception and should not be upset by our examination of the cold record."). If a parent "has gained very little insight" over the course of the proceedings about domestic violence and the danger it poses to the family, returning young children to that parent's care goes against their welfare. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).

On top of the domestic violence danger, the record shows Kathleen has struggled to maintain stable housing throughout the case. Because she did not have a safe home environment, the DHS could only offer Kathleen fully supervised visitation. Her lack of adequate housing contributes to our conclusion that the children could not return to Kathleen's care at the time of the hearing. *See In re D.M.J.*, 780 N.W.2d 243, 246 (Iowa Ct. App. 2010).

On this record, the State met its burden of proof in establishing a statutory ground to terminate the mother's parental rights.

**AFFIRMED.**